Thank you, Your Honor. May it please the Court, my name is Peter Hosherian and I will be arguing on behalf of the petitioner. Are you trying to reserve some time? Yes, I reserve a minute or a minute and a half for rebuttal. Okay, just make sure that you watch your time. Thank you, Your Honor. We're here to consider whether the Board of Immigration Appeals and the immigration judge erred in concluding that the petitioner did not establish past persecution or well-founded fear of future persecution due to lack of credibility. Since your time is limited, let me get right to the question of credibility. Why should we find that substantial evidence does not support the immigration judge's finding of adverse credibility? Well, Your Honor, as this Court found in Salaam v. INS, the immigration judge must articulate a legitimate basis to question the applicant's credibility and must offer specific and cogent reasons for any stated disbelief. The issue that the immigration judge found most troubling in this matter was the issue of forced sterilization and the fact that she did not believe that the petitioner could endure three to four hours of surgery while she was conscious and awake. That issue of credibility goes right to the heart of the matter. However, we have to look at the totality of the situation, Your Honor. The petitioner was incarcerated for 12 days. She was then taken out and met with a family planner in China who told her that she had to have a forced sterilization. She did not comply. She was then taken from her home by authorities, taken to the hospital, placed and she underwent a forced sterilization procedure. We have to imagine at that moment the unconscionable trauma that the petitioner must have been under and to expect a play-by-play analysis from the petitioner would be completely unreasonable. But the immigration judge was there and able to view her testimony and is in a much better place to assess her credibility. She made some statements that the immigration judge apparently found lacking in credibility and the immigration judge outlined why. What was the outline on that issue? Excuse me, Your Honor, can you repeat the question? Well, here she underwent a sterilization. Now, how do we know that she understood time and that she understood that the credibility was to return on the exact amount of time that she spent under this procedure? Maybe she didn't understand at all. That's exactly the point I'm trying to address, Your Honor. She was under extreme trauma and she testified that she was not able to see what the doctors were doing. She did not know if she was given anesthesia or not. She could have very well been given local anesthesia. I guarantee you that the doctors who were forcibly trying to sterilize her were not making her feel at ease in telling her exactly what's going on. She didn't know the difference between local and general anesthesia. That from the trauma, I mean, that's a pretty straightforward basic question. And I think she has a middle school education. The translation of the transcripts didn't appear any significant language difficulties. So I'm just trying to figure out, because this is an important issue, where would there have been the reason for her or why the IJ, we have to look at why the immigration judge would, why we would question the immigration judge's assessment of her credibility. And it looks like there was sufficient basis based on what the immigration judge ultimately found. Well, Your Honor, I don't know if someone with a middle school education would know the difference between local and general anesthesia. I would not know the answer to that question without surveying middle school graduates. But it does seem to me that I don't see why that would be so implausible that somebody would not know the difference between the two. She does not have a higher education and does not have any kind of medical training or background. It seems like the judge was just making an overall assumption that she could not be believed because she said she endured for two to three, three to four hours. It certainly is not cogent where it doesn't appeal forcibly to the mind or reason that this could not have occurred. But that's not really our standard, is it? I mean, our standard is we have to look at what the immigration judge found. It looks like the documentary evidence that was submitted was somewhat questionable, especially in light of her answers on where she worked and where she lived. The totality of all that combined didn't help her credibility or ultimately when the immigration judge had to determine her credibility. How do you account for that or how do you explain that? Well, most of the issues did not go to the heart of the matter. But you look at the totality, and the immigration judge, you know, did too, to see. I understand that this forced sterilization is an important point, but this is post Real ID Act, right? Correct. So we look at all of the circumstances. And you're correct, Your Honor. And we believe that the immigration judge did not weigh all of the evidence in favor of the petitioner in this matter. The petitioner provided documentary evidence of her detention, the payment of her fine, the actual medical accounts for the force of sterilization. She even provided documents of medical documents here in the United States. The immigration judge had no way to authenticate these documents. He allowed them to come in. I think he or she allowed them to come in to be, for a better word, kind. I mean, but the fine receipt numbers were inconsistent, and she only produced one fine payment receipt. I mean, in the other cases where the forced sterilization has been successfully argued, there's been a lot more documentation that's been able to be authenticated. That's not the case here, is it? Well, Your Honor, there was no evidence of any type of forgery or unreliability of those documents. So any further case law has been sound, and any further authentication is not necessary unless you have some type of evidence that the documents are fabricated in a way. But is it her? I'm sorry. And I see I've got a minute left, Your Honor. Let me just ask another question. Let's assume the forced sterilization took place. That alone is not enough. As I read, he versus Ashcroft, whether the advocate was eligible for asylum turned entirely on credibility since persecution based on opposition to birth control policies while making him eligible to be considered, the credibility of the petitioner can trump that even if that documentary evidence were admitted, if the IJ gave sufficient reasons for finding her incredible, the fact that she had been forcibly sterilized. While you and I may agree that that should be enough, our cases don't so hold. Isn't that correct? Well, Your Honor, I believe that the immigration judge found herself in her decision, oral decision that she or in the written decision that she agreed that it would be enough, but she denied the application based on credibility. So it's not enough. Well, we can't If the petitioner is not found to be credible. If the petitioner is not found to be credible, it's not enough, but if That was my only point. Okay. Thank you. Good morning, Your Honors. My name is Beau Santen. I'm here today on behalf of the governments. This petition for review should be denied because the record evidence does not compel the conclusion that the petitioner testified credibly in this case. The immigration judge gave a long list of reasons for doubting the credibility of the petitioner in this case. Indeed, the petitioner herself failed to challenge four of the very reasons that the immigration judge gave for finding her incredible. And those four reasons are, one, her failure to authenticate her foreign language documents. Two, that her declaration that she submitted with her asylum application was general in nature. It lacked specificity. And, indeed, was inconsistent with her testimony before the immigration judge. The third finding that they did not challenge is that the immigration found that there was no objective evidence supporting petitioner's claim that she was threatened with losing her job or having her house torn down. I kind of mixed the last two reasons. The I.J. gave that there was objective evidence for losing her job. And the other reason was for not having her house torn down. These reasons go completely uncontested before this Court. And under the precedent of this circuit, so long as there is one reason that the immigration judge gave that's firmly grounded in the record, that is more than sufficient to uphold the agency's decision in this case. And, indeed, you don't have just one finding by the immigration judge that goes uncontested, but you have four. And any one of these reasons, standing alone or altogether, are more than sufficient to deny the petitioner's view in this case. Why should we not grant the petition and remand so that the I.J. can consider Cal's additional evidence? Apparently, there's some significant additional evidence that was not presented to the I.J. previously. Your Honor, I believe you're referring to the two letters that were submitted to the appeal that showed that she had been, indeed, had her tubes tied. Well, the first thing I want to say, this is ‑‑ A ligation. Yes. Okay. Yes, Your Honor. But, as you noted, it was never presented before the immigration judge. She had the opportunity to present this evidence. She had been in the United States for multiple years, could have gone to the doctor. In fact, she was asked on cross-examination why she didn't present this evidence. She said she didn't know and that she felt fine and she didn't go to the doctor. She had the opportunity to present it. But on top of that, this new evidence is irrelevant to the ultimate decision of the immigration judge in this case because, first, the fact that she was, you know, sterilized is not evidence that she was forcefully sterilized. In addition to that, this evidence, even if assumed to be true, does not undermine the many reasons that the immigration judge gave for denying the petitioner, in this case, asylum and similar relief. In addition to that, the Board of Immigration Appeals did not have the authority to review this new evidence. Under the regulations, their review is limited to merely the record before it. The fact that they attached this evidence to the appeal doesn't change that. In addition to that, the petitioner in this case could have filed a timely motion to reopen her case with the immigration judge based on this new evidence. If you go and look at the record, the two letters ‑‑ Just a second, counsel. Sure. Judge Fletcher? Oh, sorry, Your Honor. Isn't that discretionary with the judge? If he wishes to consider it, may he not do so? I'm a little unclear, Your Honor. Are you talking about the immigration judge or are you talking about the Board of Immigration Appeals? I'm talking about the judge's capacity for reviewing it. And I think it's discretionary as to whether he does it or not or she does it. I'm still a little unclear, Your Honor. Are we talking about the ability to review the evidence, the Board being able to review the evidence? Yes. That is actually limited by the regulation that the Board of Immigration Appeals can only review the record that was created before the immigration judge. And these letters were not part of that record. But I would say that the petitioner had ample opportunity to present this immigration ‑‑ excuse me, to present this evidence to the immigration judge. Because I was going to say that the petitioner got these letters within two weeks of the adverse ruling by the immigration judge. Clearly, these letters were prepared for the appeal to try to get the case to go back to the immigration judge. That's why they were both, you know, created two weeks afterwards. A petitioner, an alien, has an opportunity to file a motion to reopen to the immigration judge 90 days after the adverse decision by the immigration judge. These two letters clearly fall within the ambit of that temporal limitation. But petitioner did not do that. Instead, petitioner decided to attach that evidence to the appeal. He had a clear opportunity to get this evidence before the IJ and then perhaps again to the Board if it were to be appealed. Even now, petitioner has an opportunity to get this evidence before the Board of Immigration Appeals by filing a motion to reopen based on ineffective assistance of counsel citing the failure to present this new evidence that would arguably verify the fact that she was indeed sterilized. At the end of the day, the immigration judge never had this evidence before him. Or excuse me, her. The Board of Immigration Appeals then had it, but they were limited by their review and could not consider this evidence on appeal. Counsel, what is the timeframe for filing a motion to reopen on the basis of ineffective assistance of counsel? There is actually no time limit. Finally, if that motion were filed today? Well, Your Honor, let me be clear. Under the regulations, to file a motion to reopen with the Board of Immigration Appeals, you only get 90 days. And there is an exception that's been carved out for ineffective assistance of counsel, if you can prove that. And there are a whole host of factors in deciding whether or not. But at the end of the day, the petitioner does have an opportunity to file this motion to reopen. Whether or not it will be granted is left to be determined by the Board of Immigration Appeals. But the fact remains that the petitioner does have an opportunity to get this motion based on ineffective assistance of counsel before the Board of Immigration Appeals. The fact is she simply did not do that in this case. Well, did the records exist at the time of her hearing? I'm not sure that they did. You mean the two letters? They did not exist. They were prepared after the adverse decision by the immigration judge. But she still had an opportunity to get that evidence before the immigration judge by filing a timely motion to reopen, which she did not do. My question, filing a timely motion to reopen, it was her lawyer's fault. I mean, let's assume that she would make this claim. Assuming, Your Honor, at the time. You said file a timely motion. And what is meant by that? Well, a timely motion to reopen would be 90 days after the adverse decision by the immigration judge. That would be a timely one. And the same thing also applies if you were to file a motion to reopen with the board. And that's what I'm suggesting that Petitioner can do now. Not to file a motion to reopen with the immigration judge. That deadline has passed. You know, it's on appeal. It's already been decided. Now she would have to file a motion to reopen with the Board of Immigration Appeals. But that would be an untimely motion because they only have 90 days in which to file a motion to reopen after a Board of Immigration Appeals decision. Thus, the Petitioner would have to file a motion to reopen based on the claim of ineffective assistance of counsel because if that motion is granted. And she has unlimited time to do that. Well, Your Honor, there's a whole host of factors, like I said. Like, for example, she has to show that she was due diligence in pursuing her case and trying to determine the status of whether or not correct steps had been taken in her case. And we don't have any evidence on this issue. But the time period could be equitably told in order to make it timely. But you have to demonstrate on a number of factors. And the Board of Immigration Appeals has, you know, set this forth in matter of Lizoda. This Court has upheld those certain factors and said that in addition to that, you know, a motion to reopen could be denied if the Petitioner has not acted with due diligence in pursuing her claim and she has to show that she was prejudiced by the ineffective assistance of counsel. Let me ask you on a different topic before your time is up. I recall correctly the IJA concluded that Cal resided, the Petitioner resided in California based solely upon evidence indicating that the Petitioner did not reside in Arizona. But there wasn't any evidence presented that the Petitioner was living in California during her proceeding. Isn't this an erroneous conclusion based on the IJA's unsubstantiated speculation that could call into question how the IJA considered and weighed all the evidence when making a credibility determination? A couple of responses, Your Honor. The first thing is even if this Court were to reach the conclusion that this finding was an error, that would not be sufficient to overturn the agency's decision. Because as I said in the beginning, there was a whole laundry list of reasons. But in addition to that, there was credible evidence in the record that Petitioner was being untruthful in her testimony regarding her residence in Arizona. There was, I mean, the government sent a special agent out to her address where she allegedly lived, and it wasn't her. It was someone completely different who had resided there for almost a year during the same time that Petitioner claimed she lived there. So there's all this credible evidence. That's just one example of it. But Petitioner herself on cross-examination admitted, I don't have any evidence to prove where I live in Arizona. I don't have an ID. I don't have a bill. I have nothing. I recognize that earlier in the argument. But what's the effect of the I.J. making this assessment not on any substantial evidence, and does that call into question his or her credibility? No, Your Honor. This untruthful testimony calls into question the overall credibility of the Petitioner in this case. And under the Real ID Act, which this case falls, any inconsistencies, any falsehoods can be relied upon by the immigration judge in finding a person incredible. And that's what the immigration judge did in this case. He noted that, she noted that this is one reason among many for finding the Petitioner untruthful. And this is very blatant. There's, you know, there's evidence that shows that she does not live there. So the fact is, going to your question, Your Honor, this calls in her overall credibility. And if I can invoke the well-settled Latin motto, falso san uno, falso in omnibus. Well, we'll end on that. Okay. Do you have any questions, Judge Fletcher? No. Judge Nelson, any other questions? No, thank you. All right. Thank you very much. Thank you. Also, I'll give you two complete minutes if you want to respond. Okay. Thank you, Your Honor. Your Honor, the immigration judge indicated that the Petitioner's testimony was evasive, nonresponsive, and untrue, but failed to identify any specific instances of unresponsive, evasive, or untrue statements. This, as I was saying before, and Your Honor alluded to it with a question to Respondents' Counsel, that this seemed to be trying to, with a judge who apparently did not possibly believe the Petitioner on certain issues and then applied, just totally saw her as being incredible throughout her entire testimony. I'm more curious to find out why a motion to reopen was not filed with the immigration judge or with the VIA. Your Honor, I wasn't privy to that. I was just retained to do this oral argument here. The attorney who filed the petition for review did not discuss that with me, and I don't know who the underlying attorney was in this matter at the trial court. You agree, though, that the Petitioner could have filed a motion to reopen based on the documents she received after the hearing, after the adverse ruling? I agree that it definitely was a possibility to file within the 90-day window a motion to reopen. Whether or not it would have been successful, I don't know. But as far as ineffective assistance of counsel, that remains to be seen. Like counsel said, there might be an equitable tolling issue as far as that's concerned. That would depend on equitable tolling? I believe so, Your Honor. I can't be certain on that. All right. Thank you. Thank you. Fletcher, do you have any other questions? No. No.  You may be seated. Thank you for your presentations here today. Thank you, Your Honor.
judges: Fletcher, Nelson, Murguia